**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL ANGELO MORALES,
                    *Petitioner,*

v.

STEVEN W. ORNOSKI, Acting
Warden, for the California State
Prison at San Quentin,
                    *Respondent.*

No. 06-70884

ORDER

Filed February 19, 2006

Before: Andrew J. Kleinfeld, M. Margaret McKeown, and
Raymond C. Fisher, Circuit Judges.

---

## ORDER

Michael Angelo Morales, a California state prisoner scheduled to be executed on February 21, 2006 at 12:01 a.m., has filed a request for stay of execution and an application for leave to file a second or successive ("SOS") petition for writ of habeas corpus under 28 U.S.C. § 2244(b). The Supreme Court of California denied Morales's most recent habeas petition on February 15, 2006. We have jurisdiction under 28 U.S.C. § 2244, and we deny the applications Morales now presents to this court.[1]

Morales was convicted of first degree murder with premeditation and two special circumstances — intentional killing by

---

[1]In a separate opinion, we deny Morales' appeal from the district court's denial of a stay of execution pursuant to his 42 U.S.C. § 1983 claim. *See Morales v. Hickman*, ___ F.3d ___, (9th Cir. 2006).

torture and intentional killing by lying in wait — for the brutal murder and rape of Terri Winchell. His conviction became final in 1989, after the California Supreme Court affirmed the conviction and the United States Supreme Court denied certiorari. *People v. Morales*, 48 Cal.3d 527, *cert. denied Morales v. California*, 493 U.S. 984 (1989). On July 20, 1992, Morales filed a petition for writ of habeas corpus in the United States District Court and, after some of his claims were dismissed without prejudice as not exhausted, he filed a state habeas petition to exhaust them. The California Supreme Court denied his petition "on the merits and as untimely," on July 28, 1993. Morales amended his federal petition to include the unexhausted claims; his petition raised 52 claims. The district court dismissed the unexhausted claims as procedurally defaulted. We reversed and remanded for consideration of all claims on the merits. *Morales v. Calderon*, 85 F.3d 1387, 1388 (9th Cir. 1996). The district court then denied his petition on the merits. On appeal, we affirmed and the United States Supreme Court denied certiorari. *Morales v. Woodford*, 388 F.3d 1159 (9th Cir. 2004), *cert. denied*, ___ U.S. ___, 126 S.Ct. 420 (2005).

We may grant leave to file an SOS petition only if "the application makes a prima facie showing that the application satisfies the requirements of" § 2244(b).**²** 28 U.S.C. § 2244(b)(3)(C). Section 2244(b)(1) requires dismissal of claims that were previously presented in a federal habeas petition. 28 U.S.C. § 2244(b)(1). Section 2244(b)(2) requires dismissal of claims not previously presented unless:

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

---

**²**Morales also asks us to exercise our power to recall the mandate because of grave new circumstances. We decline to do so.

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Morales's application does not rest on a "a new rule of constitutional law" that requires relief, so § 2244(b)(2)(A) is not applicable. Thus, to the extent that Morales raises claims not previously presented, he must make a prima facie showing of due diligence and actual innocence.

Morales seeks to raise four claims in the district court, each of which revolves around the assertion that informant Bruce Samuelson offered perjured testimony at trial. Morales's claims must be dismissed as they were either raised in the previous habeas petition and are barred under § 2244(b)(1), or because they fail to meet § 2244(b)(2)(B)'s requirements.

In Claim One of the proposed SOS petition, Morales argues that the prosecution fraudulently presented Samuelson's false testimony that Morales confessed to him while they were both in jail, and that this false testimony was the sole basis for the lying-in-wait special circumstances finding, which established his death eligibility. In his previous habeas petition, Morales raised the same arguments regarding Samuelson's false testimony about the purported confession and the prosecutor's knowledge of the false testimony and the purported effect on the lying-in-wait special circumstance finding. This court denied a Certificate of Appealability as to those claims, and the Supreme Court denied certiorari. *See Morales v. Brown*, 126 S.Ct. 420 (2005).

Morales cites now-retired Judge McGrath's recent statement made in a letter supporting the clemency petition that he would not have permitted Morales to be subject to the death penalty in light of the new allegations about Samuelson's perjured testimony. This new assertion does not, however, change the analysis because "the basic thrust or gravamen" of Claim One is predicated on the same challenges to Samuelson's testimony and the government's alleged misconduct that were previously considered by this court. As we explained in *Babbitt v. Woodford*, a "ground is successive if the basic thrust or gravamen of the legal claim is the same, regardless of whether the basis claim is supported by new and different legal arguments . . . [or] proved by different factual allegations." 177 F.3d 744, 746 (9th Cir. 1999) (quoting *United States v. Allen*, 157 F.3d 661, 664 (9th Cir. 1998)). Accordingly, this previously considered claim is dismissed under § 2244(b)(1).

Claims Two and Three of the proposed SOS petition are virtually identical to claims already presented and rejected either on the merits or through denial of a Certificate of Appealability in the previous habeas proceeding in this Court. Specifically, in his previous habeas proceeding, Morales argued that his death sentence rested on the state's presentation of false testimony from a government-planted snitch who testified in exchange for prosecutorial favors.[3] These claims are recycled in the present petition. In Claim Two, Morales argues that the prosecution knowingly presented Samuelson's false testimony regarding the extent of his plea bargain, and also failed to disclose impeachment evidence. In Claim Three, Morales argues that Samuelson was an unlawful government agent planted to elicit incriminating statements from Morales,

---

[3]Notably, in his Petition for Rehearing or Rehearing on En Banc, which was denied in March 2005, counsel for Morales argued that "Morales's death sentence rests entirely on the DA's use of false evidence from a state sponsored snitch who testified in exchange for undisclosed prosecutorial favors."

in violation of *Massiah v. United States*, 377 U.S. 201 (1964). *See Morales v.Woodford*, 388 F.3d at 1179-80. Because these claims were previously presented, they are dismissed. 28 U.S.C. § 2244(b)(1).

Even if we were to conclude that Claims One, Two and Three were not previously presented, we would nonetheless deny the application to file an SOS petition on these grounds because Morales fails to make a prima facie showing that he could not have previously discovered the factual predicate for these claims through due diligence. 28 U.S.C. § 2244(b)(2)(i). Morales has known about the alleged infirmities in Samuelson's testimony since as early as 1993. To the extent that Morales now offers more specific details about the allegedly perjured testimony and prosecutorial misconduct, he offers insufficient justification for failing to present the arguments earlier; nor does he suggest that he could not have uncovered this evidence through the exercise of due diligence as the evidence has all been available since the time of Samuelson's original testimony. Morales offers no legitimate justification for why the new evidence "regarding three key players in this case: Samuelson's lawyer, John C. Schinck; Judge K. Peter Saiers; and the prosecutor, Bernard Garber," was not presented earlier. The judge's recent statement is predicated on a favorable resolution of an evidentiary issue that Morales has known about and been pursuing for over a decade— Samuelson's credibility. The Samuelson allegations, even when coupled with the judge's statement, do not meet the standards necessary for a second or successive habeas corpus application.

Morales characterizes Claim Four as a "stand-alone claim of actual innocence," citing *Herrera v. Collins*, 506 U.S. 390, 417 (1993). Morales must satisfy an "extraordinarily high" burden under *Herrera*. *Id.* at 417. As explained in *Schlup v. Delo*, 513 U.S. 298, 327 (1995), a substantive "*Herrera*-type claim"—i.e., a claim based on factual innocence—"would have to fail unless the federal habeas court is itself convinced

that th[e] new facts unquestionably establish [Morales's] innocence." This burden is not met.[4]

Although "Morales acknowledge[s] his involvement in and responsibility for the homicide," he argues that absent Samuelson's perjured testimony regarding his confession, a finding of the lying-in-wait special circumstance would not have been possible. He also argues that "uninvestigated information about [his] history of drug abuse and his drug use [of PCP] on the day of the offense . . . show him to be innocent" of capital murder. This latter argument was previously raised in his first petition in connection with his ineffective assistance of counsel claim. As Morales acknowledges responsibility for the homicide, Claim Four appears to be a claim of actual innocence solely with respect to the special circumstance of lying in wait.

"It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Significantly, Samuelson's testimony is not the sole basis for the lying-in-wait circumstance. Several other witnesses, including Patricia Flores, Morales's housemate, and Raquel Cardenas, his girlfriend, testified that Morales spoke with them about the murder both before and after the fact. Cardenas testified that Morales "told me how he killed her." Morales was in the back seat of the car and Terri Winchell was in the front passenger seat when he "tried to strangle her . . . with the belt and it broke so he hit her over the head . . . with a hammer." In addition, Flores testified that the day before Morales murdered Terri Winchell, he came up behind her in their home and

---

[4]To the extent the claim is alternately characterized as a procedural "gateway" claim—i.e. the miscarriage of justice exception—under *Schlup v. Delo*, 513 U.S. 298 (1995), "he must show 'by clear and convincing evidence' that no reasonable juror would have found him eligible for the death penalty in light of the new evidence." *Calderon v. Thompson*, 523 U.S. 538, 559-60 (1998) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992)). Morales fails to satisfy this standard as well.

"practiced" putting a belt around her neck as if to strangle her. Judge McGrath does not reference this testimony. With the additional testimony of Flores and Cardenas, Morales cannot demonstrate that the new facts, particularly Judge McGrath's statement, "unquestionably" establish his innocence.

As noted in our earlier opinion:

> There is no reason to doubt on this record that the jury decided that Morales had murdered her because he was Rick Ortega's cousin and Rick was angry and jealous of her. There is no reason to doubt that the jury decided Morales helped trick her into the car, sat behind planning to kill her after some practice with the belt and having brought a belt, hammer, and knife to do it with. There is no reason to doubt that after he failed to kill her by strangling her with the belt, he beat her head in with a hammer, and when she still lived, dragged her out of the car, raped her, and stabbed her several times.

*Morales*, 388 F.3d at 1172.

Accordingly, the application for leave to file an SOS petition is denied. The request for stay of execution is denied.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2006 Thomson/West.